MATTHEW D. METZGER (SBN 240437)
mmetzger@belvederelegal.com
**BELVEDERE LEGAL, PC**
1777 Borel Place, Suite 314
San Mateo, CA 94402
Telephone: (415) 513-5980
Facsimile:  (415) 513-5985

Attorney for Defendant David Preston Addington

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| In re | Case No. 25-40890 WJL 11 |
| DAVID PRESTON ADDINGTON | Chapter 11 |
|     Debtor. | A.P. No.  25-04032 |
| SSN:  XXX-XX-3795 | **MOTION TO DISMISS COMPLAINT FOR ORDER DETERMINING DEBT TO BE NONDISCHARGEABLE 11 U.S.C. §523(a)(6); MEMORANDUM OF POINTS IN AUTHORITIES IN SUPPORT** |
| HUMBOLDT GROWERS NETWORK, INC., a California corporation, and TOBIAS DODGE, an individual, | |
|         Plaintiffs. <br> vs. | **Date:**  November 12, 2025 <br> **Time:** 10:30 a.m. <br> **Place:**  In Person |
| DAVID PRESTON ADDINGTON | or via Zoom/AT&T Teleconference <br> Courtroom 220 <br> 1300 Clay St., Room 220 <br> Oakland, California |
|         Defendant | **Judge:** Hon. William J. Lafferty, III |

# TABLE OF CONTENTS

MOTION ...................................................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 2

I. INTRODUCTION ............................................................................................................ 2

II. REQUEST FOR JUDICIAL NOTICE ........................................................................... 2

III. STANDARD OF PLEADING AND CONTROLLING CSA LAW ...................................... 4

    A. Rule 12(b)(6) and *Twombly/Iqbal* Pleadings Standards for Section 523(a)(6) Claims............ 4

    B. *Twombly/Iqbal* Pleadings Standards for Section 523(a)(6) Claims ........................................ 6

    C. The CSA ...................................................................................................................... 7

    D. The Ninth Circuit Bankruptcy Appellate Panel Has Adopted a Flexible Standard with Regards to the Adjudication of CSA Claims ......................................................................... 8

IV. ARGUMENT .................................................................................................................... 9

    A. State Law Establishes Pre-Petition Claims ................................................................. 9

    B. The CSA Presents Cause to Value the Adversary Plaintiffs' Claims at $0.00 ...................... 10

    C. The Complaint Fails to Separately Plead Willful and Malicious ......................................... 11

V. LEAVE TO AMEND WOULD BE FUTILE ........................................................................ 12

VI. CONCLUSION ................................................................................................................ 13

Case: 25-04032    Doc# 9    Filed: 10/06/25    Entered: 10/06/25 22:43:43    Page 2 of 16

# <u>TABLE OF CONTENTS</u>

**Cases**

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990)...............................................5

*Bassidji v. Goe*, 413 F.3d 928 (9th Cir. 2005) ...............................................................8

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007). .......................................................4

*Carrillo v. Su (In re Su)*, 290 F.3d 1140 (9th Cir.2002)...........................................7

*Conley v. Gibson*, 355 U.S. 41 (1957) ...........................................................................5

Diaz v. Int'l Longshoremen's & Warehousemen's Union, Local 13, 474 F.3d 1202  (9th Cir. 2007) 6

*Gonzalez v. Raich*, 545 U.S. 1 (2005) ...........................................................................8

*In re Burton*, 610 B.R. 633 (B.A.P. 9th Cir. 2020) .................................................. 2, 10

*In re Callaway*, 663 B.R. 109 (Bankr. N.D. Cal. 2024), ...........................................9

*J. Lilly, LLC v. Clearspan Fabric Structures Int'l, Inc.,* No. 3:18-CV-01104-HZ, 2020 WL 1855190, (D. Or. Apr. 13, 2020) ............................................................................. 12

*Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982) ....................................................8

*Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709 (2018) ............................. 11

<u>Love v. U.S.</u>, 915 F.2d 1242 (9th Cir. 1988) ............................................................ 14

*Mann v. Gullickson*, No. 15-cv-03630-MEJ, 2016 WL 6473215 (N.D. Cal. Nov. 2, 2016) ............... 9

<u>Steckman v. Hart Brewing, Inc</u>., 143 F.3d 1293 (9th Cir. 1998). .............................. 13

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443 (2007) ........................... 10

*United States v. McIntosh*, 833 F.3d 1163  (9th Cir. 2016). .......................................8

**Statutes**

Civil Rule 12(b)(6) ....................................................................................................... 11

**Rules**

Bankruptcy Rule 7042........................................................................................................2

Bankruptcy Rule 7008.........................................................................................................4

Civil Rule 8(a) ....................................................................................................................4

### **MOTION**

Defendant David Preston Addington ("Addington") will and hereby does move for an order dismissing the *Complaint Objection to Dischargeability of Debt (*11 U.S.C. §523(a)(6)), Dkt. # 1, pursuant to Federal Rule of Civil Procedure 12(b)(6) and Bankruptcy rule 7012(b) (the "Motion"). Addington's Motion is based on the notice of hearing, the accompanying memorandum of points and authorities, the request for judicial notice, as well as the exhibits included in the accompanying request for judicial notice.

Dated:   October 6, 2025                                   Respectfully submitted,

                                                             **BELVEDERE LEGAL, PC**

                                         By:      /s/ *Matthew D. Metzger*
                                                    Matthew D. Metzger

                                                  MATTHEW D. METZGER (#240437)
                                                  Belvedere Legal, a Professional Corporation
                                                  1777 Borel Place, Suite 314
                                                  San Mateo, CA 94402
                                                  Tel:  (415) 513-5980
                                                  Fax: (415) 513-5985

                                                  Attorney for Defendant David Preston Addington

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendant David Preston Addington moves to dismiss the *Complaint Objection to Dischargeability of Debt (*11 U.S.C. §523(a)(6)), Dkt. # 1 (the "Compl.") filed by Plaintiffs Humboldt Growers Network, Inc. and Tobias Dodge ("Adversary Plaintiffs"). Concurrently herewith, Addington asks, pursuant to Federal Rule of Bankruptcy Procedure 7042, that the Court consolidate into this adversary proceeding the three (3) separate claim objections that Addington is prosecuting in the main bankruptcy case as to Claim 2-1, Claim 3-1 and Claim 4-1 filed by the Adversary Plaintiffs on related grounds.

**In sum, Addington argues that allowing the Adversary Plaintiffs' claims at a value greater than $0.00 would require the Court to compel a Debtor-in-Possession, acting as its own trustee, to violate the Controlled Substances Act, 21 U.S.C. § 841 *et seq.*, ("CSA") to pay lost profits and related damages to a cannabis distribution operations illegal under the CSA.** Applying the *Law v. Siegel* admonition against applying statutory mandates in a contradictory manner, it would appear contradictory for a court, on one hand, to dismiss a debtor's case that would have required the debtor to distribute proceeds from an illegal business in violation of the CSA (*In re Burton*, 610 B.R. 633, 640 (B.A.P. 9th Cir. 2020), and to require another debtor here, acting as his own trustee (Addington), to reimburse lost profits related damages to a cannabis distribution operation illegal under the CSA. While the act of filing Claim 2-1, Claim 3-1 and Claim 4-1 establishes that the Adversary Plaintiffs have pre-petition claims, said claims must be valued $0.00, so that the Debtor would not required to violate the CSA by paying any amount on said claims. If the claims are valued $0.00, the Adversary Plaintiffs have no actionable damages. Thus, the complaint fails to state a claim upon which relief can be granted.

### II. REQUEST FOR JUDICIAL NOTICE

The Motion is based also on the four (4) exhibits identified in the Request for Judicial Notice ("RJN") and the corresponding Declaration of Matthew D. Metzger in Support of Request for Judicial Notice ("Metzger Decl."). Claim 2-1, Claim 3-1, and Claim 4-1 filed by the Adversary

Plaintiffs illuminate only the existence of a pre-petition state court judgment but fail to include the factual findings from the pre-petition state court proceedings.

Exhibit 1 to the RJN contains the Amended Statement of Decision from the state court trial on which all three (3) claims are based. Exhibit 1 makes clear the following adjudicated facts:

- Prepetition, David Addington's entity, Piner Partners ("Piner Partners"), was the subtenant at the address commonly known as 947 Piner Place via a written sublease with master tenant Ridgeway Distribution, LLC ("Ridgeway") and landlord Passini;

- Piner Partners' sublease was terminated pre-petition;

- The Adversary Plaintiffs Tobias Dodge ("Dodge") and Humboldt Growers Network, Inc. ("HGN") were subtenants of Addington's entity Piner Partners;

- Dodge and HGN operate the 47 Piner Place site as a "Shared-space Cannabis Distribution Hub" in compliance with California state law;

- Addington and Piner Partners commenced the state court action alleging violations against Ridgeway *et al* for: 1) Tortious Interference with Business Relations; and 2) Violations of Business and Professions Code § 17200;

- Ridgeway and HGN/Dodge each separately cross-complained against Addington and Piner Partners for, *inter alia* 1) Breach of Contract; 2) Breach of the Implied Covenant of Good Faith and Fair Dealing; and 3) Interference with Economic Relations;

- On or about November 8, 2023, the Court entered judgment against David Addington and Piner Partners, who "shall take nothing from any and all defendants under their complaint in the action";

- On or about November 8, 2023, the Court entered damages in favor of Ridgway in the amount $58,006.50 against Addington and Piner Partners, jointly and severally;

- On or about November 8, 2023, the Court entered damages in favor of the Adversary Plaintiffs HGN and Dodge in the amount of $2,580,000 against Addington and Piner Partners, jointly and severally. Said damage included $1,800,000 in "lost profits"

and the $780,000 for other, related damages caused to the Adversary Plaintiff's cannabis distribution operations.

### III. STANDARD OF PLEADING AND CONTROLLING CSA LAW

Federal Rule of Civil Procedure 12 (b) (6) provides that a Defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12 (b)(6). As most Rule 12 motions challenge the sufficiency of pleadings, Addington has identified hereinbelow that the operative pleading standard here falls under Rule 8(a).

Addington's Motion focus partially on pleading standard; the willful and malicious prongs of a section 523(a)(6) must be separately pleaded and here they are pleaded as conjunctive synonyms. From the fact of the complaint itself, Addington cannot glean which facts are alleged to be "willful" and which actions are alleged to be "malicious").

However, instant motion to dismiss under Rule 12(b)(6) is focused primarily on the larger, federally preemptive level that the complaint cannot state a claim upon which relief can be granted because, while the Adversary Plaintiffs have claims established prepetition under California state law, nondischargeability is governed under federal bankruptcy law. Federal nondischargebility law necessarily falls within the constraints of the Controlled Substances Act, 21 U.S.C. § 841 *et seq.*, ("CSA"). The CSA prohibits a Chapter 11 Debtor-in-Possession ("DIP") prohibits a Chapter 11 Debtors – actings as its own trustee and likely post-confirmation disbursing agent – from making distributions to Adversary Plaintiffs for pre-petition damages relating exclusively to lost profits from a cannabis distribution operation.

### A. Rule 12(b)(6) and *Twombly/Iqbal* Pleadings Standards for Section 523(a)(6) Claims

A complaint, or portion thereof, should be dismissed for failure to state a claim if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554, 562-563 (2007) (citing *Conley v. Gibson*, 355 U.S. 41 (1957)); *see also* Fed. R. Civ. P. 12(b)(6). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the

speculative level on the assumption that all of the complaint's allegations are true." *Id*. (citations omitted). Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990).

Generally, Civil Rule 9(b) applies to allegations of actual fraud, in contrast with Rule 8 that would apply to allegations other than fraud. Bankruptcy Rule 7008 renders Civil Rule 8 applicable in adversary proceedings. Civil Rule 8(a) requires a pleading that states a claim for relief to contain: "a short and plain statement of the claim, showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Where a pleader alleges facts sounding in fraud or mistake, such facts must be stated with particularity.

Rule 8(a) applies here, where Plaintiffs allege do not allege fraud only one count willful and malicious conduct under §523(a)(6) and do not allege fraud. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47  (1957)). A complaint must also "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The Supreme Court has stated that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Twombly*, 550 U.S. at 556.. The Supreme Court further noted that:

> Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

*Iqbal*, 556 U.S. 662 at 663–64 (citations omitted). Under the pleading standard conveyed in *Iqbal* and *Twombly*, a complaint must allege more than a mere "formulaic recitation" of the elements of a claim to withstand a Rule 12(b)(6) challenge.   The complaint also must "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 668.  When a court reviews the

sufficiency of a complaint, the issue is not whether a plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support its claims. *Diaz v. Int'l Longshoremen's & Warehousemen's Union, Local 13,* 474 F.3d 1202, 1205 (9th Cir. 2007). "In practice, a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007).

The Ninth Circuit examined the relevant case law, in *Starr v. Baca*, 652 F.3d 1202, 1215 (9th Cir.2011), and succinctly defined the federal pleading requirements under FRCP 12(b)(6) and *Twombly/Iqbal* as follows:

> [W]e can at least state the following two principles common to all of [the cases]. First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011)

### B. *Twombly/Iqbal* Pleadings Standards for Section 523(a)(6) Claims

As the Supreme Court explained the first element, in *Kawaauhau v. Geiger*, 523 U.S. 57, 61, (1998), "The word "willful" in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." This does not include injuries which are neither desired nor anticipated by the debtor. *Id*. The "willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *In re Ormsby*, 591 F.3d 1199, 1206 (C.A.9, 2010), citing *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir.2002).

In order to plead the "malice" element of § 523(a)(6) claim, the plaintiff must include facts to show that it is plausible that plaintiff's injuries were the result of, "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Id*. at 1207.

## C.  **The CSA**

The Controlled Substances Act ("CSA") is a statutory scheme that regulates nearly every facet of the manufacturing, distribution, and dispensing of controlled substances. 21 U.S.C. § 841 *et seq*.  In addition to the prohibition on most actions related to the manufacture and distribution of marijuana, the CSA, in brief, prohibits the following in relation to those activities:

• It is unlawful under the CSA to "manufacture, distribute, or dispense" a controlled substance. 21 U.S.C. §§ 841(a)(1), 844(a) (penalties).

• Using the internet, or aiding or abetting use of the internet to engage in marijuana business. 21 U.S.C. § 841(h).

• Conspiring or attempting to conspire to commit marijuana business. 21 U.S.C. § 846.

• Engaging in the marijuana business in an organizational, supervisory, or management role and deriving substantial income or resources from that role. 21 U.S.C. § 848.

• Investing proceeds of marijuana business in securities on the open-market or any other enterprise that may affect interstate or foreign commerce. 21 U.S.C. § 854.

• Deriving profits or proceeds from marijuana business. 21 U.S.C. § 855.

• Leasing or maintaining, owning, or occupying any space that is used for marijuana business. 21 U.S.C. § 856.

Most relevant to this case is that each of these sections of the CSA prohibit direct acts or benefits as they relate to engaging in marijuana business.  The Controlled Substances Act ("CSA") designates cannabinoids as a Schedule I controlled substance. 21 U.S.C. § 812. As of the May 21, 2025 Petition Date, marijuana products remain a Schedule I controlled substance under the CSA, the most tightly regulated classification of controlled substances.  It is unlawful under the CSA to "manufacture, distribute, or dispense" a controlled substance. 21 U.S.C. §§ 841(a)(1), 844(a) (penalties). The CSA criminalizes the manufacture, distribution, and possession of marijuana for any reason, including for purposes permitted by state law.  *Gonzalez v. Raich*, 545 U.S. 1 (2005) (CSA applies to sale of medical marijuana permitted under state law). The Ninth Circuit has made clear that "[a]nyone in any state who possesses, distributes, or manufactures marijuana for medical

or recreational purposes (or attempts or conspires to do so) is committing a federal crime" under the CSA, and the Supremacy Clause of the Constitution prohibits states from authorizing the manufacture, distribution, or possession of marijuana while it remains a Schedule I controlled substance under the CSA. *United States v. McIntosh*, 833 F.3d 1163, 1179 n. 5 (9th Cir. 2016). Here, the Adversary Plaintiffs seek payment on prepetition claims for lost profits that it would have earned from the manufacture, distribution, or dispensation of marijuana but for Defendant's pre-petition conduct, pursuant to the Amended Statement of Decision from the State Court Case. Metzger Decl. ¶ 3, Exh. 1

A federal district court may not enforce a contract if enforcing the contract would require a party to engage in conduct that is unlawful under federal statutes. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982) (declining to enforce a contract that violated federal antitrust statutes); *Bassidji v. Goe*, 413 F.3d 928, 939-40 (9th Cir. 2005) (declining to enforce a contract that would have furthered trade with an Iranian company in violation of an executive order). In determining whether to enforce a contract, "courts should consider whether a remedy exists 'that would not require a court to order a legal violation.' " *Mann v. Gullickson*, No. 15-cv-03630-MEJ, 2016 WL 6473215, at *7 (N.D. Cal. Nov. 2, 2016) (quoting Bassidji, 413 F.3d at 939).

### D.  The Ninth Circuit Bankruptcy Appellate Panel Has Adopted a Flexible Standard with Regards to the Adjudication of CSA Claims

In deciding whether or not to dismiss bankruptcy cases where Debtors derive some or all income from a marijuana business, the Ninth Circuit has expressed that bankruptcy courts have "appropriate latitude" to deal with these fact-specific inquiries in the light of the stated reluctance to adopt per-se bright line rules requiring the immediate disposition of bankruptcy cases.   The common thread consistently states that a bankruptcy court could not order any remedy that compels a Debtor, a Chapter 13 Trustee, or a Chapter 11 Trustee, or a Debtor-in-Possession acting as his own trustee, from violating federal law (e.g. by using bankruptcy estate proceeds to reimburse a marijuana business for lost profits, in violation of 21 U.S.C. § 841, or contributing disposable

income through a chapter 11 plan to claims based on a marijuana business, in violation of 21 U.S.C. § 841).

In *In re Callaway*, 663 B.R. 109 (Bankr. N.D. Cal. 2024), a bankruptcy court declined to dismiss a motion to dismiss filed by a chapter 7 trustee finding that the chapter 7 trustee was not in danger of administering illegal assets in violation of the CSA.  "While it is true that realizing profits from a marijuana business is prohibited by the CSA, there is nothing presented by the parties, nor discovered by the court, that suggests that monetizing an intangible ownership interest is the equivalent of profiting from a marijuana business."  *In re Callaway*, 663 B.R. 109, 116 (Bankr. N.D. Cal. 2024) ("*Callaway*").  Even the *Callaway* court recognized that realizing profits from a marijuana business violates the CSA.

By contrast, in *In re Burton*, 610 B.R. 633, 640 (B.A.P. 9th Cir. 2020) ("*Burton*"), the Ninth Circuit Bankruptcy Appellate Panel dismissed a Chapter 13 case finding that the Debtors' ties to a medical marijuana business would result in proceeds of an illegal business becoming part of a bankruptcy estate, requiring the trustee and the court to administer assets that constitute proceeds of activity criminalized by the CSA.

## IV. ARGUMENT

### A. State Law Establishes Pre-Petition Claims

There is no dispute that Adversary Plaintiffs have prepetition claims.  Here, the Adversary Plaintiffs obtained a pre-petition judgment under California state law in a superior court of California.  The Supreme Court has long recognized that the "'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having 'generally left the determination of property rights in the assets of a bankrupt's estate *451 to state law.'  *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450–51 (2007).

Additionally, the Adversary Plaintiffs filed Claim 2-1, Claim 3-1, and Claim 4-1. The filing of a proof of claim by a creditor establishes consent that the bankruptcy court now has jurisdiction over the claim under 28 U.S.C. § 157(b)(2)(B), regarding allowance or disallowance of claims.  *In*

*re Conejo Enters., Inc.*, 96 F.3d 346, 353 (9th Cir. 1996). Thus, the Adversary Plaintiffs are now subject to the bankruptcy court's "core" jurisdiction under 28 U.S.C. § 157(b)(2)(B).

**B. The CSA Presents Cause to Value the Adversary Plaintiffs' Claims at $0.00**

While the Adversary Plaintiffs have pre-petition claims established under California state law, Addington argues, for the reasons that follow, that Claim 2-1, Claim 3-1, and Claim 4-1 all qualify as "CSA Claims" that the CSA Claims cannot be valued at any amount greater than $0.00.

One of the bedrock principles of our bankruptcy law and system is that the honest but unfortunate debtor is entitled to a fresh start. *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 715 (2018) ("One of the 'main purposes' of the federal bankruptcy system is 'to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain character.' ") (quoting *Stellwagen v. Clum*, 245 U.S. 605, 617 (1918) (internal formatting omitted))); *Grogan v. Garner*, 498 U.S. 279, 286-87, (1991) ("the [Bankruptcy] Act limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor.') (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934).

Another well-established principle is to refrain from applying statutory mandates in a contradictory manner. For example, in *Law v. Siegel,* 571 U.S. 415, 134 S. Ct. 1188, 188 L.Ed.2d 146 (2014), the Supreme Court declined to contravene expressed provisions of the Bankruptcy Code regarding administrative expenses on the one hand and exemptions on the other hand and held that a debtor's exempt property could not be used to pay those administrative expenses notwithstanding debtor's egregious conduct that was not related to his exemption claim. Stated otherwise, the provisions of the Bankruptcy Code regarding exemptions would not give way to another section of the Bankruptcy Code that permitted allowance of administrative expenses.

Across the caselaw, the jurisprudence is clear that a bankruptcy court cannot require a chapter 11 DIP acting as its own trustee to reimburse proceeds to a marijuana distribution business, which would realize profits from a marijuana business, in violation of the CSA. Applying the *Law v. Siegel* admonition against applying statutory mandates in a contradictory manner, it would appear contradictory for a court, on one hand, to dismiss a debtor's case that would have required the

debtor to distribute proceeds from an illegal business in violation of the CSA (*Burton*), and to require another debtor, acting as his own trustee (Addington), to reimburse lost profits to the Adversary Plaintiffs, as paying any value over $0.00 to the Adversary Plaintiffs would cause the debtor to violate the CSA but returning lost profits and relates illegal business operations damages to the Adversary Plaintiffs.

In sum, while the act of filing Claim 2-1, Claim 3-1 and Claim 4-1 establishes that the Adversary Plaintiffs have pre-petition claims, said claims must be valued $0.00, so that the Debtor would not required to violate the CSA by paying any amount on said claims. If the claims are valued $0.00, the Adversary Plaintiffs have no actionable damages. Thus, the complaint fails to state a claim upon which relief can be granted.

### C.  A Claim for Payment of Lost Profits Violates the CSA

In *J. Lilly, LLC v. Clearspan Fabric Structures Int'l, Inc.,* No. 3:18-CV-01104-HZ, 2020 WL 1855190, at *1 (D. Or. Apr. 13, 2020) ("*J. Lilly*") granted summary judgment against a cannabis grower's claim for 5.4 million in lost profits on several grounds, including that awarding these damages would violate the CSA.  In *J. Lilly, LLC v. Clearspan Structures Int'l*, the grower purchased a commercial greenhouse from a manufacturer to start a cannabis grow operation.  After the greenhouse was constructed, the grower alleged defects that rendered the building incapable of supporting the type of grow operation intended.   The grower brought several contract-based claims against the manufacturer and a negligence claim against the contractor who installed the greenhouse. The grower alleged that it lost $5.4 million in profits because it was unable to get the business started due to the allegedly defective greenhouse.   J. Lilly, 2020 WL 1855190, at *10.  Considering the illegality issue, the Court concluded that it could not award the plaintiffs the lost profits they seek as doing would violate the CSA.  The Court noted:

> A federal district court may not enforce a contract if enforcing the contract would require a party to engage in conduct that is unlawful under federal statutes. Kaiser Steel Corp. v. Mullins, 455 U.S. 72 (1982) (declining to enforce a contract that violated federal antitrust statutes); Bassidji v. Goe, 413 F.3d 928, 939-40 (9th Cir. 2005) (declining to enforce a contract that would have furthered trade with an Iranian company in violation of an executive order). In determining whether to

enforce a contract, "courts should consider whether a remedy exists 'that would not require a court to order a legal violation.' " Mann v. Gullickson, No. 15-cv-03630-MEJ, 2016 WL 6473215, at *7 (N.D. Cal. Nov. 2, 2016) (quoting Bassidji, 413 F.3d at 939).

*Id*. at * 11.

Here, allowing the claims to go ahead any damage figure greater than $0.00 also would violate the CSA and require the Debtor to reimburse proceeds to an illegal cannabis distribution business.

### D. **The Complaint Fails to Separately Plead Willful and Malicious**

In *In re Su*, 290 F.3d 1140, 1146 (9th Cir. 2002), the Ninth Circuit made clear a complaint must not conflate the "willful" and "malicious" prongs to survive a Rule 12 (b)(6) challenge. *See* In re Su, 290 F.3d at 1146 ("The BAP correctly observed that in *In re Jercich,* we treated the "malicious" injury requirement of § 523(a)(6) as separate from the "willful" requirement"

Here, every paragraph of the Complaint that references the  "willful" and "malicious" prong mentions them together in an apparent conflation; there is no separate pleading of the willful element; there is no separate pleading of the malicious element; the two are conflated throughout the pelading.   As such, Addington cannot possibly grasp which actions the Adversary Plaintiffs allege are "willful" and which are "malicious").   Should the Court grant any leave to amend, Addington requests that any amended pleading separate plead the "willful" and "malicious" elements of the § 523(a)(6) claim.

### V. **LEAVE TO AMEND WOULD BE FUTILE**

However, here, the Court should not grant leave to amend because the CSA prohibits the Debtor from paying any value above $0.00 to the Adversary Plaintiff's claims.   The Adversary Plaintiffs cannot rehabilitate the pleading via any amended form to resolve the CSA federal preemption issue.

A court should not dismiss a complaint pursuant to Civil Rule 12(b)(6) "unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Steckman v. Hart Brewing, Inc*., 143 F.3d 1293, 1295 (9th Cir. 1998). That said,

courts are not bound to accept as true a legal conclusion couched as a factual allegation" *Love v. U.S.*, 915 F.2d 1242, 1245 (9th Cir. 1988).

Here, where, as leave to amend would be futile, Addington requests that the Court dismiss with prejudice the Complaint.

## VI. CONCLUSION

For the foregoing reasons, Defendant Addington respectfully requests that the Court:

1) dismiss the Complaint with prejudice for failure to state a claim; and

2) grant any such further relief as the Court deems just, necessary, and proper.

Dated: October 6, 2025

**BELVEDERE LEGAL, PC**

By:    /s/ *Matthew D. Metzger*

Matthew D. Metzger

Attorney for Defendant David Preston Addington