Ross B. Jones, Esq., SBN 120593
ROSS B. JONES, ATTORNEY AT LAW
131A Stony Circle, Ste. 500
Santa Rosa, California 95401
Telephone: (707) 524-9433
Email:  ross@rossjoneslaw.com

Attorneys for Plaintiffs
HUMBOLDT GROWERS NETWORK, INC. and
TOBIAS DODGE

| | |
|---|---|
| In re<br>DAVID PRESTON ADDINGTON<br>        Debtor.<br>SSN:  XXX-XX-3795 | Case No. 25-40890 WJL 11<br>Chapter 11<br>A.P. No.  25-04032<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DETERMINING DEBT TO BE NONDISCHARGEABLE 11 U.S.C. §523(a)(6)** |
| HUMBOLDT GROWERS NETWORK, INC., a California corporation, and<br>TOBIAS DODGE, an individual,<br><br>                    Plaintiffs.<br>        vs.<br><br>DAVID PRESTON ADDINGTON<br><br>                    Defendant | **Date:** October 7, 2026<br>**Time:** 10:30 a.m.<br>**Place:**  In Person<br>            or via Zoom/AT&T Teleconference<br>            Courtroom 220<br>            1300 Clay St., Room 220<br>            Oakland, California<br><br>**Judge:** Hon. William J. Lafferty, III |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DETERMINING DEBT TO BE NONDISCHARGEABLE 11 U.S.C. §523(a)(6)**

Case: 25-04032   Doc# 30   Filed: 06/13/26   Entered: 06/13/26 11:16:01   Page 1 of 22

# TABLE OF CONTENTS

I.      INTRODUCTION……………………………………………………………………………5

II.     FACTUAL AND PROCEDURAL BACKGROUND…………………………………………6

A.  The Parties Business History and State Court
Litigation……………………………………………………………………………………6

B.  The Adversary Proceeding………………………………………………………………… 10

III.    ARGUMENT……………………………………………………………………………...11

A.  The Legal Standard for Summary Judgment……………………………………………11

B.  Issue Preclusion Applies to the Trial Court Judgment…………………………………………11

C.  Addington's Conduct, Established in the Final Judgment, Constitutes Willful and Malicious Injury…………13

1.  Battery under California Law Constitutes Willful and Malicious Injury………………………………14

2.  Conversion Without Justification or Excuse under California Law
Constitutes Willful and Malicious Injury……………………………………………………………15

3.  Trespass Under California Law Constitutes Willful and Malicious Injury……………………………………..17

4.  Intentional Interference with Business under California Law
Constitutes Willful and Malicious Injury……………………………………………………………19

5.  Self-help Eviction under California Law Constitutes Willful and Malicious Injury……………………………21

IV.     CONCLUSION……………………………………………………………………………..22

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DETERMINING DEBT TO BE NONDISCHARGEABLE U.S.C. §523(a)(6)**

Case: 25-04032   Doc# 30   Filed: 06/13/26   Entered: 06/13/26   Page 2 of 22

# TABLE OF AUTHORITIES

**Cases**

2010 Bankr. LEXIS 3067 at *16-19 (9th Cir. BAP Jan. 15, 2010). ................................................................18

*All In One Trading, Inc. v. Chaparala (In re Chaparala)* (Bankr. C.D. Cal. 2020) 2020 Bankr. LEXIS 2068 * .......19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ................................................................10

*Bane v. Hajime Sorayama (In re Bane)* ................................................................18

*Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008) ................................13

*Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008) ................................10

*Culver Center Partners East #1, L.P. v. Baja Fresh Westlake Village, Inc.*, (2010) 185 Cal.App.4th 744, 749-50 ...20

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 393-394; 45 Cal.Rptr.2d 436, 902 P.2d 740 (1995) ................................................................11

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 45 Cal.Rptr.2d 436, 902 P.2d 740 (1995) ............18

*Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991) ................................................................10

*In re Bailey* (1999) 197 F.3d 997, 1000 ................................................................14

*In re Bailey* (1999) 197 F.3d 997, 1000; see also, *In re Atmadjian* (2017) 577 B.R. 875, 888-889 ................14

*In re Baldwin* (9th Cir. 2001) 249 F.3d 912, 917 ................................................................10

*In re Baldwin, supra*, 249 F.3d 912 ................................................................14

*In re Bammer* (9th Cir. 1997) 131 F.3d 788, 791 ................................................................13

*In re Jercich* (2001) 238 F.3d 1202, 1208 ................................................................13

*In re Kumar* 661 B.R. 241, 247 (Bankr. N.D. Cal 2024 ................................................................20

*In re Thiara* (9th Cir. BAP 2002) 285 B.R. 420 ................................................................15

*Kawaauhau v. Geiger*, 523 U.S. 57, at 61-62; 140 L. Ed. 2d 90, 118 S. Ct. 974 (1998) ................................13

*Lucido v., Sup. Ct.* (1990) 51 Cal.3d. 335 ................................................................11

*Ralphs Grocery Co. v. Victory Consultants, Inc.*, (2017) Cal. App. 5th 245, 262, 225 ................................16

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DETERMINING DEBT TO BE NONDISCHARGEABLE §523(a)(6)**

**Statutes**

11 U.S.C. § 523(a)......................................................................................................................10

**Other Authorities**

CACI 2100 (Conversion-Essential Factual Elements) ...............................................................19

CACI No. 1300 ...........................................................................................................................19

CACI No. 2000 ...........................................................................................................................19

**Rules**

Fed. R. Civ. P. 56(a)...................................................................................................................10

Fed. R. Civ. P. 56(c), (e) ............................................................................................................10

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DETERMINING DEBT TO BE NONDISCHARGEABLE UNDER §523(a)(6)**

Case: 25-04032   Doc# 30   Filed: 06/13/26   Entered: 06/13/26   Page 4 of 22

# I. INTRODUCTION

This Court described the final state court judgment against Debtor as "not only almost textbook descriptions of tortious acts, i.e., conversion of personal property, trespass, assault and battery, intentional interference with economic relations, but also cites to inculpating testimony, namely, that when reminded of the disastrous effect that Defendant's actions had upon the business and property of the Plaintiffs, Defendant's response was, essentially, "I don't care." (Memorandum Decision After Hearing Regarding Objections to Claims and Motion to Dismiss, AP Dkt. #24, 9:11-15).

The factual and legal findings in the judgment are entitled to issue preclusion under California law. The judgment lists at least five examples of Addington's actions that constitute "willful and malicious" conduct under section §523(a)(6)--conversion, trespass, intentional interference with business relations, battery, and self-help eviction.

Viewed together, the state court judgment paints a picture of the Defendant intentionally undertaking a series of wrongful acts without just cause or excuse, intended or substantially certain to cause Plaintiffs' injury. This Court should enter an order determining the judgment debt to be non-dischargeable.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

A. The Parties' Business History and State Court Litigation

In 2017, Piner Partners, a general partnership owned by Defendant, sub-leased real property located in Santa Rosa, California (the "Property") to Plaintiffs. Decision, 19-21. As provided in the lease agreement, Dodge paid Piner Partners $100,000 to improve the leased commercial facilities and operate the premises as a distribution hub for

---

[1] The factual summary is based on the trial court's Amended Final Statement of Decision (hereinafter "Decision") filed on November 8, 2023 in the State Court Action. See Decl. of Ross B. Jones, ¶4, Exh.2 (true and correct copy of the Final Amended Statement of Decision). Defendant asked the Court to take judicial notice of the Decision in connection with his Motion to Dismiss--RJN, Exh.1 (AP Docket #10). The factual summary also includes excerpts from the Court's Memorandum Decision After Hearing Regarding Objections to Claims and Motions to Dismiss (AP Dkt. #24), which cited the Decision.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DETERMINING DEBT TO BE NON-DISCHARGEABLE §523(a)(6)**

cannabis products. *Id*. at 19, 21-24. In addition, HGN agreed to make monthly rental payments of $4,000 and to pay an additional $1/16^{th}$ of the building's common-area expenses in return for Plaintiffs' right to access the common-area's facilities and spaces. Piner Partners promised to use its "best efforts to maintain strict compliance" with California and local cannabis laws. *Id*. Piner Partners also operated a cannabis business at the Property. *Id*.

Plaintiffs moved into their leased space after fulfilling their contractual obligations and commenced operations. Under the rubric of allegedly complying with State Cannabis Control "contiguous space" regulations, Defendant started to expand his own cannabis operations on the Property, encroaching on other tenants' leased spaces, including Plaintiffs', and impacting adversely their rights under their subleases.

Defendant's expansion did not initially trigger a dispute between the parties. In fact, when Defendant started expanding his operations into Plaintiffs' spaces, Plaintiffs initially offered to adopt floor plans that would vary the space available to them, but which they believed would ensure compliance with state regulations while satisfying Defendant's increased demands for space. In further support of these efforts at a constructive solution, Plaintiffs also reached out to the State licensing bureau and took the lead in working with the other subtenants at the Property to resolve issues between themselves and Defendant and his companies.

The trial court's Decision recounted: "When all the sub-tenants came up with a revised facility layout that met regulatory contiguous-space laws-a layout that gave Addington's company CHAMP the largest space and sole control of the refrigerated storage lockers-Humboldt asked Addington if he would agree to it. Addington responded with a one-word email: 'No.'" Decision, 16:25-28.

The trial court explained what Addington did next: "Instead, Addington and Piner took over the facility for his own use. Addington changed the key-pad locks on the interior doors so Tobias and Humboldt could not access over $1 million of their

6

Case: 25-04038   Doc# 30   Filed: 06/13/26   Entered: 06/13/26 11:06:6   Page 6 of 22

product in the refrigerated storage locker. Addington locked access to the sally port-the only place where cannabis could legally enter and exit the facility-despite his own admission that the State allowed the sally port to serve as shared space. Addington told Tobias that the sally port was part of Addington's own distributorships' (CHAMP) leased space. Addington submitted plans to state regulators claiming the sally port as CHAMP's leased space so he could license virtually the entire building for himself. Addington, without consent or authority, sold Humboldt's product under Addington's 'CHAMP' distributorship, then denied doing so despite photograph proof. Addington illegally trimmed raw cannabis in what was supposed to be the shared-space processing area. He physically intimidated the tenants; assaulting Steve Dodge in front of multiple witnesses and slamming his office door in Kyle Dixon's face. By mid-2019, Addington restricted Humboldt to a 10 x 10-foot office, despite confirming to the State the original intention that 'no cannabis activities' would take place in the offices." Decision, 17:1-16 (internal citations to trial testimony and exhibits omitted).

The Decision cited Tobias Dodge's testimony: ""When David [Addington] got his packaging equipment, he moved it in there; put in the locks on the doors, shut everybody out; submitted for his premise for the entire building which then precluded anybody from having overlapping premises. It functioned basically as a hostile takeover." Decision, 27:8-11. The Decision quoted Tobias Dodge's trial testimony of the dire conditions Humboldt faced: "We were being told that by the state agents that it was a unlicensed civil facility; that actually no license in that facility was going to be issued if we didn't come to an agreement, reorganize the plan, have a Certificate of Occupancy, all have contiguousness with the sally port, all of those issues were standing in between us and licensing and the clock was running out. We were getting really scared." Decision, 17, 25-28, 18:1.

The Decision described Tobias' pleas to Addington. "When Tobias told Addington that Piner's restrictions were forcing Humboldt to turn away business,

7

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DETERMINING DEBT TO BE NONDISCHARGEABLE §523(a)(6)**

Case: 25-04038   Doc#30   Filed: 06/13/26   Entered: 06/13/26   Page 7 of 22

Addington's response boiled down to, 'I don't care. We're not going to do anything to adjust your space. Just put your orders in, and we'll get to them when we can get to them. And I'm not going to adjust my SOPs regarding chain of custody at all.' So, it just got basically impossible to work." Decision, 18: 2-6. The Decision quoted another witness' trial testimony: "His [Addington's] view was that we subleased from him small office suites and if we wanted to operate in different parts of the building, we could contract through his business ... his standpoint was that legally he didn't have to make any changes, that he was - it was his building." Decision, 27:1-4. The trial court concluded: "Addington's position was that he had sole control of all cannabis product moving through the facility, and the tenants could use CHAMP's packaging services - at inflated rates." Decision, 26:27-28.

The trial summarized Addington's actions: "Addington's response to the 'contiguous space' issue was to take forcible possession of the shared spaces in 2019 - without any contractual basis, and contrary to his obligations under the sub-leases he signed with Tobias and later Humboldt." Decision, 27: 26-28; see also, Decision, at 24: 28, 25:1-2: "The undisputed evidence also shows that Addington refused to improve the premises so it could operate as a distribution hub under the State's contiguous-space regulations. To the contrary, by mid-2019-when the subtenants were desperately trying to get their annual State licenses under threat of closure-Addington claimed that what had universally been agreed-to as shared areas were now part of CHAMP's 'leased space.'"

The Decision explained that Addington's new claims of his leased space were bogus: "Addington emailed Tobias on August 27, 2019: "The sallyport at 947 is part of California CHAMP's leased area." Addington email to Tobias dated July 24, 2019: "When we last traded emails, I suggested that you provide me with what documents you might possess that grant you after hours access to the CHAMP sallyport." Addington did not present any documentary evidence at trial to support his claim that the sally port

8

Case: 25-04032   Doc# 30   Filed: 06/13/26   Entered: 06/13/26 16:27:23   Page 8 of 22

and other shared spaces were part of CHAMP's leased premises. . . . When Addington's own counsel asked him 'When you're talking about the sally port as part of CHAMP's lease, what are you referring to?' Addington gave a rambling nonresponsive answer that was stricken from the record." *Ibid*, at 24:28, 25:1-13.

By 2019, HGN could no longer legally operate out of the original facility and it opened a different distribution facility in Humboldt County to continue operations. *Id*. at 18:13-16. "Yet Humboldt - despite being unable to function out of the Piner Place facility - paid Piner Partners $80,000 in rent from March 2019 until October 2021 under constant threat of eviction. Addington put a bike-chain lock on the front door, three days after sending Humboldt an eviction notice. Six months later, Addington changed the front door locks days after sending Humboldt another eviction notice, even though Humboldt was paying rent to the court in its Interpleader action." Decision, 18:7-12 (internal citations to trial testimony and exhibits omitted).

HGN incurred significant costs in relocating to the new facility in Humboldt County and in rental costs for the leased space at the Property, which it was prevented from using, and ultimately suffered $4 million in lost profits due to the nonfulfillment of orders at the Property. Plaintiffs claimed $5 million in damages resulting from breaches of the sublease agreement with Piner Partners, caused by Defendant's wrongful behavior. Decision, 18:13-18. On July 1, 2019, Defendant commenced the State Court Action against Ridgeway Distribution LLC (the master lessor of the Property) and later added Plaintiffs as defendants. Plaintiffs filed a cross complaint against Defendant and Piner Partners for Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, and for Interference with Business Relations. The case was tried in May 2023, culminating in the Decision.

The state court found that Defendant's tortious and wrongful conduct led to Piner Partners' breach of contract with Plaintiffs and the breach of the implied covenant of good faith and fair dealing. *Id*. at 33:18-20. It also found that Defendant's and

Case: 25-04038   Doc# 30   Filed: 06/13/26   Entered: 06/13/26 16:12:28   Page 9 of 22

Piner Partners' conduct amounted to conversion, trespass, and battery. *Id*. at 33:18-20; 34:1-3. In addition, the state court held that Defendant's conduct established intentional interference with the business relations of Plaintiffs. Ultimately, the court awarded Plaintiffs $2,580,000 in damages against Defendant and Piner Partners (the "Final Judgment"). *Id*. at 36:14-18. The damages included $780,000 in out-of-pocket expenses and a further $1,800,000 in lost profits.

Defendant appealed the Final Judgment. *See* Attachment A-2 to Proof of Claim 2-1 filed by HGN. The appeal was dismissed on April 22, 2025. *Id*. Defendant's Petition for Rehearing was denied on May 20, 2025 *See* Attachment A-3 to Proof of Claim 2-1 filed by HGN. The Court of Appeals issued its Remittitur on June 23, 2025. *See* Attachment A-4 to Proof of Claim 2-1 filed by HGN.

Undeterred, Addington then filed a series of eight separate motions in the trial court seeking to "void" the judgment. The trial court eventually declared Addington a vexatious litigant in April 2026, ordering him to stop filing motions. Jones Decl, ¶5, Exh. 3.

### B. The Adversary Proceeding

On August 21, 2025, Plaintiffs filed a complaint against Defendant, initiating the above captioned adversary proceeding (the "Complaint"). AP Dkt. No.1. The Complaint sought a determination that the debt owed to Plaintiffs was nondischargeable under 11 U.S.C. § 523(a)(6), alleging that the debt was the result of willful and malicious conduct by Defendant, as purportedly determined in the Decision in the State Court Action. *Id*. at 2.

Defendant filed a Motion to Dismiss the Complaint on October 6, 2025. AP Dkt. No. 9. Defendant filed a Request for Judicial Notice on October 6, 2025, asking the Court to take judicial notice of the Decision and the final Judgment. AP Docket #10. The Court issued its Memorandum Decision After Hearing Regarding Objections to

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DETERMINING DEBT TO BE NONDISCHARGEABLE 1 U.S.C. §523(a)(6)**

Claims and Motions to Dismiss on April 24, 2026, denying Defendant's Motion to Dismiss and overruling his claim objections (AP Dkt. #24).

**III. ARGUMENT**

### A. The Legal Standard for Summary Judgment

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (incorporated by FRBP 7056); *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008) (applying FRCP 56 summary judgment standards to adversary proceedings). An issue is "genuine" only if a reasonable fact finder, looking at the evidence, could find for the non-moving party, and a dispute is "material" only if it could affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact. Once the moving party has met its initial burden, the non-moving party must show specific facts establishing the existence of genuine issues for trial. *See Anderson*, 477 U.S. at 250; *see also* Fed. R. Civ. P. 56(c), (e).

### B. Issue Preclusion Applies to the Trial Court Judgment

Principles of collateral estoppel (also called issue preclusion) apply to proceedings seeking exceptions from discharge brought under 11 U.S.C. § 523(a). *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991); see *In re Baldwin* (9th Cir. 2001) 249 F.3d 912, 917: "Under the Full Faith and Credit Act, 28 U.S.C. § 1738, the preclusive effect of a state court judgment in a subsequent bankruptcy proceeding is determined by the preclusion law of the state in which the judgment was issued. By contrast, what constitutes 'willful and malicious injury' under § 523(a)(6) is a matter of federal law." *Ibid* (internal citations omitted).

California law applies collateral estoppel if five elements are met:

First, the issue sought to be precluded from relitigation must be identical to that

11

Case: 25-04032   Doc# 30   Filed: 06/13/26   Entered: 08/13/26 13:21:7   Page 11 of 22

decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*In re Baldwin, supra,* at 917-918 (quoting *Lucido v., Sup. Ct.* (1990) 51 Cal.3d. 335).

Here, there is no dispute that all five elements are met. First, Plaintiffs seek to preclude relitigation of the issues actually litigated in the state court action—Addington's liability and damages for various causes of action under California substantive law.

Second, and third, these issues were "actually litigated" and necessarily decided in the trial court. Under California law, tort of Intentional Interference with Business requires the court to find conduct that is independently wrongful. *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 393-394; 45 Cal.Rptr.2d 436, 902 P.2d 740 (1995). Here, the trial court explicitly found that Addington committed the torts of conversion, trespass, and battery (as well as breach of contract and breach of the implied covenant of good faith and fair dealing). Decision, 33-34. The court concluded that all these wrongful acts satisfied the elements of Intentional Interference with Business. *Ibid*, at 32-35: "The testimony and evidence proves every element of the claim." Decision, at 32:8.

Fourth, the decision is final on the merits. The court conducted a 12-day trial before entering judgment. Addington exhausted all post-trial motions and appeals. Fifth, the party against whom preclusion is sought—David Addington—is the same in both the trial court judgment and this adversary proceeding.

California law also requires that for issue preclusion to apply, "public policies underlying the collateral estoppel doctrine would be furthered by application of preclusion in the particular issue before the court." *In re Baldwin*, supra, at 919. The three policies are "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." *Ibid,* at 920.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DETERMINING DEBT TO BE NONDISCHARGEABLE §523(a)(6)**

With regard to the integrity of the judicial system, "the California Supreme Court directs us to inquire whether eliminating the possibility of inconsistent verdicts--which would follow from the application of collateral estoppel--would undermine or enhance the public's confidence in the judicial system." *In re Baldwin*, supra, at 920: "Where, as here, the state court was fully capable of adjudicating the issue subsequently presented to the bankruptcy court, we conclude that the public's confidence in the state judicial system would be undermined should the bankruptcy court relitigate the question of whether Baldwin had acted with the intent to injure Kilpatrick." *Ibid*.

The Ninth Circuit in *Baldwin* noted "it is obvious that application of collateral estoppel in the present context will promote judicial economy. If Baldwin were not precluded from relitigating the issue, the bankruptcy court would have to conduct an evidentiary hearing in order to determine whether Baldwin intentionally acted to injure Kilpatrick. Relying on the state court's determination allows the bankruptcy court to conserve judicial resources." *Baldwin*, supra, at 920. Likewise, the trial court here conducted a 12-day trial before rendering a 36-page Statement of Decision finding that Addington intentionally acted to injure Plaintiffs.

The last public policy—protection of litigants from harassment by vexatious litigation—is especially relevant here. Not only did Addington have a "full and fair opportunity to litigate the issue in the state court proceedings," [2] he abused the court system by filing eight meritless post-appeal motions. The trial court eventually declared Addington a vexatious litigant in April 2026, ordering him to stop filing motions. Jones Decl, ¶5, Exh. 3.

### C. Addington's Conduct, Established in the Final Judgment, Constitutes Willful and Malicious Injury.

The Ninth Circuit rule is that "the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury or that

---

[2] *In re Baldwin*, supra, at 920.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DETERMINING DEBT TO BE NONDISCHARGEABLE UNDER §523(a)(6)**

Case: 25-04032 Doc# 30 Filed: 06/13/26 Entered: 08/13/26 12:27:47 Page 13 of 22

the debtor believed that injury was substantially certain to occur as a result of his conduct. We believe that this holding comports with the purpose bankruptcy law's fundamental policy of granting discharges only to the honest but unfortunate debtor." *In re Jercich* (2001) 238 F.3d 1202, 1208. "'Willful' intent does not require that the debtor had the specific intent to injure the creditor, if the act was intentional and the debtor knew that it would necessarily cause injury. *Id.* at 1207. "Willful" means "voluntary" or "intentional." *Kawaauhau v. Geiger*, 523 U.S. 57, at 61-62; 140 L. Ed. 2d 90, 118 S. Ct. 974 (1998).

The willful requirement is separate and distinct from the "malicious" requirement. *See Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008). A plaintiff must also prove "malicious" injury to establish its claim under Section 523(a)(6), which is a requirement separate from the "willful" requirement. *In re Su* (9th Cir. 2002) 290 F.3d 1140, 1146.

"'Malicious' injury' involves 1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *In re Jercich*, *supra*, 238 F.3d at1208. This definition "does not require a showing of biblical malice, i.e. personal hatred, spite, or ill-will." *In re Bammer* (9th Cir. 1997) 131 F.3d 788, 791.

The question is whether Addington's conduct amounts to "willful and malicious" under Section 523(a)(6). Numerous cases answer the question: Yes. In fact, Addington committed at least five separate torts that bankruptcy courts deemed willful and malicious.

1. Battery under California Law Constitutes Willful and Malicious Injury

The Ninth Circuit affirmed a bankruptcy court decision granting summary judgment under §523(a)(6) based on a California state court judgment for battery. *In re Baldwin, supra*, 249 F.3d 912. The Ninth Circuit described that "In *Geiger*, the Supreme Court held that an act is covered by § 523(a)(6) if it was committed with 'the actual intent to cause injury.' 523 U.S. at 61. Without equating intentional torts with acts covered by § 523(a)(6), the Court noted that § 523(a)(6) 's specification of 'willful and malicious

Case: 25-04032   Doc# 30   Filed: 06/13/25   Entered: 08/13/25 13:21:17   Page 14 of 22

injury' triggers in the lawyer's mind the category of intentional torts. Intentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'" *In re Baldwin,* 249 F.3d at 918 (internal citations omitted, italics in original).

As the Ninth Circuit explained, "Under California law, the tort of battery requires the unlawful, harmful, or offensive contact with the person of another. In order to be guilty of battery, a defendant must have intended the harmful contact." *In re Baldwin*, *supra,* 249 F.3d at 918.

Here, the Decision found that Addington committed battery on Tobias' father, Steve Dodge. Decision, 34:1-3. The trial court quoted testimony from multiple witnesses describing the viciousness of Addington's attack. *Ibid*, at 26: 14-24: ""And so Mr. Dodge started to walk in, and we started to follow him. And David, you know, grabbed Mr. Dodge by the shirt and slammed him into the wall and Mr. Dodge fell over. And then David slammed the door on us with the coded lock that at that time we didn't have a code to and continued on with the meeting."

The trial court's finding that Addington committed battery establishes willful and malicious injury under the Ninth Circuit test.

2. Conversion Without Justification or Excuse under California Law Constitutes Willful and Malicious Injury.

The Ninth Circuit has held that "the conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, constitutes a willful and malicious injury within the meaning of §523(a)(6)." *In re Bailey* (1999) 197 F.3d 997, 1000; see also, *In re Atmadjian* (2017) 577 B.R. 875, 888-889: "By selling the misappropriated jewelry and failing to remit the sales proceeds as agreed, [debtor] engaged in conversion and inflicted deliberate and intentional injury upon the property of [creditor]. [Debtor's] indebtedness is non-dischargeable pursuant to §523(a)(6)."[3]

---

[3] Because wrongful intent is not an element of conversion under California law, a judgment for conversion, by itself, does not establish non-dischargeability. The judgment must also show wrongful intent under §523(a)(6). See *In re Thiara* (9th Cir. BAP 2002) 285 B.R. 420: "Proof of the debtor's knowledge that he or she is harming the secured

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DETERMINING DEBT TO BE NON-DISCHARGEABLE UNDER §523(a)(6)**

The Decision here described Debtor's conduct in terms almost identical to those in *Atmadjian*: "Addington, without consent or authority, sold Humboldt's product under Addington's 'CHAMP' distributorship, then denied doing so despite photograph proof." Decision*, at 17:9-11; see also, Decision, 33: 20-24: "Addington and Piner Partners also committed conversion—they prevented Humboldt from having access to its $1 million of cannabis by placing it behind keypad locked steel doors, and sold Humboldt's cannabis under the CHAMP brand without consent, payment or documentation. See CACI 2100 (Conversion—Essential Factual Elements)." *Ibid.*

The Decision explained Addington's conduct in detail: "But Addington refused to cooperate with the tenants' efforts to structure the Hub for state-required 'contiguous space' laws. He did not fulfill his promises to provide 'shared space.' When all the sub-tenants came up with a revised facility layout that met regulatory contiguous-space laws-a layout that gave Addington's company CHAMP the largest space and sole control of the refrigerated storage lockers-Humboldt asked Addington if he would agree to it. Addington responded with a one-word email: 'No.' Exh. 121. Instead, Addington and Piner took over the facility for his own use. Addington changed the key-pad locks on the interior doors so Tobias and Humboldt could not access over $1 million of their product in the refrigerated storage locker. Addington locked access to the sally port-the only place where cannabis could legally enter and exit the facility-despite his own admission that the State allowed the sally port to serve as shared space. Addington told Tobias that the sally port was part of Addington's own distributorships' (CHAMP) leased space. Addington submitted plans to state regulators claiming the sally port as CHAMP's leased space so he could license virtually the entire building for himself." Decision, 16:23-28, 29:1-8.

The Decision concluded that Addington "engaged in a 'hostile takeover' of the leased premises, taking forcible possession of shared spaces and taking over the facility

---

creditor or the creditor's lien interest by converting the collateral establishes that the debtor either intended to inflict such injury or believed that such injury was substantially certain to occur, and thus meets the willfulness requirement of § 523(a)(6)." *Ibid*, at 432-433

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DETERMINING DEBT TO BE NONDISCHARGEABLE § §523(a)(6)**

Case: 25-04032 Doc# 30 Filed: 06/13/26 Entered: 08/13/26 12:21:7 1 Page 16 of 22

for his own use." *Id*. The trial the trial found that "Defendant intended to disrupt Plaintiffs' relationships or knew that disruption of the relationships were certain or substantially certain to occur;" that "Plaintiffs' relationships were disrupted; that Plaintiffs were harmed by the disrupted relationships, and that Debtors' conduct was a substantial factor in causing Plaintiffs' harm." *Id*, at 31-35.

These findings establish willful and malicious injury under the Ninth Circuit test for conversion—Addington converted Plaintiffs' property without their knowledge or consent, intentionally and without justification and excuse, to Plaintiffs' injury.

3. <u>Trespass under California Law Constitutes Willful and Malicious Injury.</u>

Under California law, the elements of trespass are: (1) plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or negligent entry onto the property; (3) entry onto the property in excess of permission granted; (4) harm; and (5) defendant's act was a substantial factor in causing harm to plaintiff. *Ralphs Grocery Co. v. Victory Consultants, Inc.*, (2017) Cal. App. 5th 245, 262, 225 Cal. Rptr. 3d 305. Trespass can serve as the basis for willful and malicious finding under section 523(a)(6). *See*, *Simas v. Powell* (N.D. Cal. 2021) 635 B.R. 366, 375-377: "[Debtor] understood that injury to appellees was substantially certain to occur given that appellees would have been prohibited from using the Property. These consequences include that the [plaintiffs] could not access their Property, including their personal belongings, without interference and the [plaintiffs'] loss of use and enjoyment of the Property . . . . The evidence supports the finding of appellant's willful intent, namely the subsequent changing of the locks on the Property, appellant's communication with appellees indicating that he would not leave the Property, and appellant's decision not to participate in further communications with appellees. These actions support the bankruptcy court's finding and are sufficient to show that [debtor] knew the natural consequences of his actions and that they would cause harm to appellees."

The facts here are eerily similar to debtor's conduct in *Simas*: Addington changed the keypad locks to the property, preventing Humboldt from having access to the

common areas. Addington took over the entire premises, wrongfully claiming that it was "his building." Decision, 34:10-13. The trial court emphasized that Addington's claim that the building's sally port was part of Addington' leased premises was without any documentary support, and his testimony on the subject stricken as non-responsive. *Ibid*, at 25:7-15. The Decision found Addington's conduct constituted trespass: "Addington and Piner committed trespass - they wrongfully excluded Humboldt from use of the sally port, processing and packaging areas by Addington making the unsupported claim that they were part of CHAMP's leased space and locking Humboldt out of the premises. CACI No. 2000. Addington committed trespass by locking Humboldt out of the entire building- by putting on a chain-lock on the front door, then changing the front door locks after posting eviction notices." Decision, 33: 25-28, 34: 1-2.

The *Simas* court noted that while "not all trespasses can be the basis for 523(a)(6) claims because the intent requirement for trespass can be satisfied by reckless or negligent conduct . . . more than sufficient evidence exists for the bankruptcy court's finding that appellant's entry into the home was intentional and in excess of the permission granted." *Simas*, *supra*, at fn. 4. Likewise, the Decision shows that Addington's trespass was not merely negligent or reckless; it was part of Addington's "hostile takeover" of the premises. Decision, 28: 26-28.

Lastly, the Decision's finding that Addington committed trespass satisfies the "malicious" standard under *Jercich*. See, *Simas*, *supra*, at 377: "On its face, given the evidence, there appears to be no justification for the actions[.]" The debtor in *Simas* unsuccessfully claimed that his mental state prevented him from understanding the natural consequences of his actions: "The [d]ebtor is charged with the knowledge of the natural consequences of his actions," *id.*, and the court is not required to "take the debtor's word for his state of mind, In addition, the court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action." 635 B.R. at 376.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DETERMINING DEBT TO BE NONDISCHARGEABLE 17 U.S.C. §523(a)(6)**

Case: 25-04032   Doc# 30   Filed: 06/13/26   Entered: 08/13/26 17:28:17   Page 18 of 22

Here, the Decision described that when Humboldt told Addington that his actions were preventing Humboldt from being able to conduct its business. Addington's response boiled down to, "I don't care." Decision, 18:2-6. Combined with Addington's other conduct—conversion, battery, and intentional interference—the Decision provided ample evidence that Addington acted without justification or excuse.

4. <u>Intentional Interference with Business under California Law Constitutes Willful and Malicious Injury.</u>

Under California law, courts recognize the tort of intentional interference with prospective business relations or advantages. *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 45 Cal.Rptr.2d 436, 902 P.2d 740 (1995). The court stated that "a plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful by some measure beyond the fact of the interference itself." *Della Penna*, 11 Cal.4th at 393-94.

In *Bane v. Hajime Sorayama (In re Bane)*, the Ninth Circuit BAP affirmed the bankruptcy court's grant of summary judgment of the plaintiff's §523(a)(6) claim, given the district court's factual findings and the bankruptcy court's proper grant of preclusive effect with respect to those findings. The *Bane* opinion recognized that "to prevail on a claim for interference with prospective economic advantage under California law, a plaintiff must demonstrate more than intent to injure (*i.e.*, willfulness); the conduct must be independently wrongful." 2010 Bankr. LEXIS 3067 at *16-19 (9th Cir. BAP Jan. 15, 2010). The *Bane* court likened the additional requirement of independent wrongfulness to the requirement in Section 523 that the conduct be malicious in addition to willful. *Id.* "If a court determines that a defendant's conduct was independently wrongful, the requisites of maliciousness (wrongful act done intentionally without just cause) under *Su* are satisfied." *Ibid;* see also, *All In One Trading, Inc. v. Chaparala (In re Chaparala)* (Bankr. C.D. Cal. 2020) 2020 Bankr. LEXIS 2068 * (bankruptcy court granted summary

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DETERMINING DEBT TO BE NONDISCHARGEABLE UNDER §523(a)(6)**

judgment on a 523(a)(6) complaint based on the preclusive effect of a California state court judgment against debtor for intentional interference with business relations and conversion).

Here, the trial court's Decision described the elements of the Interference cause of action and recited in detail how the evidence established every element of the claim. Decision, 31-35. In particular, the trial court concluded that "Addington and Piner Partners' conduct was independently wrongful on multiple grounds. As described above, Piner Partners breached specific provisions of its sub-leases with Tobias and Humboldt Growers, and the implied covenant of good faith and fair dealing. Addington and Piner Partners also committed conversion - they prevented Humboldt from having access to its $1 million of cannabis by placing it behind keypad locked steel doors, and sold Humboldt's cannabis under the CHAMP brand without consent, payment or documentation. See CACI 2100 (Conversion-Essential Factual Elements)." Decision, 33:18-24.

The Decision continued: "Addington and Piner committed trespass - they wrongfully excluded Humboldt from use of the sally port, processing and packaging areas by Addington making the unsupported claim that they were part of CHAMP's leased space and locking Humboldt out of the premises. CACI No. 2000. Addington committed trespass by locking Humboldt out of the entire building- by putting on a chain-lock on the front door, then changing the front door locks after posting eviction notices. Exhs. 135, 136, 138. Addington committed battery on Steve Dodge in front of multiple witnesses. CACI No. 1300." *Ibid,* at 33:25-28, 1-3.

The trial court's findings on Intentional Interference establish non-dischargeability as a matter of law--by necessity, liability for the tort includes findings of both willfulness and maliciousness. *In re Bane*, *supra*, 2010 Bankr. LEXIS 3067 at *16-19. The Court can decide this issue on a motion for summary judgment. *In re Bane*, *supra*; *All In One Trading, Inc. v. Chaparala (In re Chaparala)* (Bankr. C.D. Cal. 2020) 2020 Bankr. LEXIS 2068 *.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DETERMINING DEBT TO BE NON-DISCHARGEABLE UNDER §523(a)(6)**

### 5. <u>Self-help Eviction under California Law Constitutes Willful and Malicious Injury.</u>

Under California law, "a landlord who seeks to terminate a lease and evict a tenant must file an unlawful detainer action or an ordinary suit for breach of contract." *In re Kumar* 661 B.R. 241, 247 (Bankr. N.D. Cal 2024--citing *Culver Center Partners East #1, L.P. v. Baja Fresh Westlake Village, Inc.*, (2010) 185 Cal.App.4th 744, 749-50). In *Kumar,* the court was faced with facts remarkably like Addington's conduct here: The "relationship between Defendant and Plaintiff had become contentious;" defendant then served a 3-day notice to pay rent or quit, after which the tenant "found that a chain lock had been placed on the unit's door." *Ibid,* at 245. The bankruptcy court held that "Defendant intended to terminate Plaintiff's occupancy and opted for self-help to accomplish this goal (instead of complying with state eviction law). These constituted willful acts under § 523(a)(6)." *Ibid,* at 246. The court in *Kumar* held that defendant's conduct was malicious; it was "wrongful, intentional, and necessarily injured plaintiff." *Ibid*, at 247.

Here, the trial court described Addington engaging in the same conduct: "Yet Humboldt - despite being unable to function out of the Piner Place facility – paid Piner Partners $80,000 in rent from March 2019 until October 2021 under constant threat of eviction. Addington put a bike-chain lock on the front door, three days after sending Humboldt an eviction notice. Exhs. 135, 136, RT: 1259: 16-25, 1260: 1-7. Six months later, Addington changed the front door locks days after sending Humboldt another eviction notice, even though Humboldt was paying rent to the court in its Interpleader action. Exh. 138." Decision, 18:7-12.

Addington's self-help attempts to evict Plaintiffs, without complying with California eviction law, constitutes a separate basis for finding willful and malicious conduct.

# IV. CONCLUSION

Ninth Circuit precedent shows that Defendant's conduct—described in the final state court judgment--is nondischargeable as a matter of law under five separate legal theories. Plaintiffs' Motion for Summary Judgment based on the state court's preclusive findings should be granted.

Respectfully submitted,

Dated: August 13, 2026

ROSS B. JONES, Attorney at Law

By:_____/s/_____
       Ross B. Jones
       Attorneys for Plaintiffs Humboldt
       Growers Network, Inc. and
       Tobias Dodge

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DETERMINING DEBT TO BE NONDISCHARGEABLE 11 U.S.C. §523(a)(6)**