Ross B. Jones, Esq., SBN 120593
ROSS B. JONES, ATTORNEY AT LAW
131A Stony Circle, Ste. 500
Santa Rosa, California 95401
Telephone: (707) 524-9433
Email: ross@rossjoneslaw.com

Attorneys for Plaintiffs
HUMBOLDT GROWERS NETWORK, INC. and
TOBIAS DODGE

| | |
|---|---|
| In re<br>DAVID PRESTON ADDINGTON<br>Debtor.<br>SSN: XXX-XX-3795 | Case No. 25-40890 WJL 11<br>Chapter 11<br>A.P. No. 25-04032<br><br>**PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DETERMINING DEBT TO BE NONDISCHARGEABLE 11 U.S.C. §523(a)(6)** |
| HUMBOLDT GROWERS NETWORK, INC., a California corporation, and TOBIAS DODGE, an individual,<br><br>Plaintiffs.<br>vs.<br><br>DAVID PRESTON ADDINGTON<br><br>Defendant | **Date:** October 14, 2026<br>**Time:** 10:30 a.m.<br>**Place:** In Person or via Zoom/AT&T Teleconference<br>Courtroom 220<br>1300 Clay St., Room 220<br>Oakland, California<br><br>**Judge:** Hon. William J. Lafferty, III |



Case: 25-04032 Doc# 35 Filed: 10/07/26 Entered: 10/07/26 15:50:21 Page 1 of 14

# TABLE OF CONTENTS

I. INTRODUCTION .......... 4

II. ARGUMENT .......... 6

A. Defendant's "Apportionment" Argument Fails Because It Misstates the Judgment and California Law. . 6

B. Issue Preclusion Prevents Addington from Relitigating Matters Already Decided in the State Court Litigation. Addington's Declaration Regarding His Intent Should Be Disregarded. .......... 7

C. California Law Does Not Require Independently Wrongful Acts to Be Pled as Separate Causes of Action to Prove Intentional Interference; or for Wrongful Acts to Be Directed Only at a Party .......... 10

D. The State Court Judgment Found Addington Personally Liable for Intentional Inference Based on Multiple Findings of His Own Tortious Conduct. Addington's Personal Liability for Contract was Based Solely on His General Partner Status .......... 12

E. The Court Should Strike Defendant's Introduction of an Entire Set of Discovery Requests and Responses. .......... 13

III. CONCLUSION .......... 14

## TABLE OF AUTHORITIES

### Cases

*In re Baldwin* (9th Cir. 2001) 249 F.3d 912, 920 ........ 8

*In re Howell* (Bank. CD-Cal. 2020) 623 B.R. 565* ........ 7

*In re Jercich*, 238 F.3d 1202, 1208 (9th Cir. 2001) ........ 9

*Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1163 ........ 12

*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 ........ 7

*Redfearn v. Trader Joe's Co*., 20 Cal. App. 5th 989, 1006 ........ 11

*Simas v. Powell* 635 B.R. 366, * (Bankr. N.D. Cal.-2021), fn. 4 ........ 9

*Tavaglione v. Billings* (1993) 4 Cal. 4th 1150, 1158-1159 ........ 7

### Statutes

Corp. Code §16306 ........ 13

### Other Authorities

CACI 2202—Sources and Authority, p. 1343 ........ 11

### Rules

F.R.Civ.P. 5(d)(1) ........ 14

### Treatises

11 Moore's Federal Practice - Civil § 56.92 (fn. 2) ........ 14



Case: 25-04032 Doc# 35 Filed: 10/07/26 Entered: 10/07/26 15:50:21 Page 3 of 14

## I. INTRODUCTION

Defendant's Opposition selectively misreads portions of the state court judgment and virtually ignores the extensive record of Addington's tortious conduct. The state court found Addington personally liable for Intentional Interference, listing his multiple tortious acts. Decision, 33-34:

> "Addington and Piner Partners' **conduct was independently wrongful on multiple grounds.** As described above, Piner Partners breached specific provisions of its sub-leases with Tobias and Humboldt Growers, and the implied covenant of good faith and fair dealing. **Addington and Piner Partners also committed conversion-- -** they prevented Humboldt from having access to its $1 million of cannabis by placing it behind keypad locked steel doors, and sold Humboldt's cannabis under the CHAMP brand without consent, payment or documentation. See CACI 2100 (Conversion-Essential Factual Elements).
>
> **Addington and Piner committed trespass -** they wrongfully excluded Humboldt from use of the sally port, processing and packaging areas by Addington making the unsupported claim that they were part of CHAMP's leased space and locking Humboldt out of the premises. CACI No.2000. **Addington committed trespass** by locking Humboldt out of the entire building- by putting on a chain-lock on the front door, then changing the front door locks after posting eviction notices. Exhs. 135, 136, 138. **Addington committed battery** on Steve Dodge in front of multiple witnesses. CACI No. 1300."

Decision, 33:18-28, 34; 34:13 (bold added).

Defendant also ignores the trial court record showing that Addington knew his conduct was substantially certain to cause injury. Tobias Dodge told Addington that Humboldt was "losing accounts," and "when Tobias told Addington that Piner's restrictions were forcing Humboldt to turn away business, Addington's response boiled down to 'I don't care.'" Decision, 18:2-6.

Defendant describes the above findings as "a judgment for contract damages, imposed on Addington as a general partner."[1] Defendant has it backwards. The state court judgment stated: "Based on the evidence and testimony, Addington committed Interference with Economic Relations, **both individually and on behalf of Piner Partners**." (bold added). Decision, 36: 3-4. The Amended Statement of Decision clarified that Addington was personally liable for Piner Partner's breaches of contract only because he was the general partner of Piner Partners, G.P. (Addington was not a party to the lease). *Ibid*.

Defendant's "apportionment" argument is based on a fundamental misunderstanding of how damages are awarded under California law. California law allows recovery for both tort and contract theories but prohibits a double recovery. Here, the state court found Addington liable under both tort and contract theories. The trial court made a single damage award--$2,580,000--on both the Interference and breach-of-contract claims. Decision, 35: 10-13: "Section II.D (above) shows the harm Humboldt suffered, broken down by specific categories, resulting from Piner Partners' breach of contract. The same evidence shows the harm caused by the disrupted relationships."

Plaintiffs cited multiple cases where bankruptcy courts held debts non-dischargeable where the defendant committed battery; cases where the defendant committed conversion; and cases where the defendant committed trespass. Here, the final trial court judgment found that Addington committed multiple acts of conversion, <u>and</u> multiple acts of trespass, <u>and</u> physical battery. The judgment describes these multiple independently wrongful acts because they constitute elements of the Interference claim. More importantly, the state court Decision described them in the larger context of Addington's plan to take "forcible possession of the shared spaces" in a "hostile takeover" of the building.

The Decision establishes that Addington knew that his conduct was causing injury to Humboldt; to which Addington replied, "I don't care." Yet Addington's declaration

[1] See Defendant's Opposition MPA, 4:14.

incredulously claims he did not intend to injure Plaintiffs. Defendant's declaration is an improper attempt to relitigate those same issues finally decided by the state court.

In sum, Defendant's arguments are strawmen that distract from the real issue; one that Defendant barely addresses in his Opposition. The factual and legal findings in the state court judgment are entitled to issue preclusion, and establish as a matter of law that Addington's conduct was "willful and malicious."

The Court should grant summary judgment.

## II. ARGUMENT

### A. Defendant's "Apportionment" Argument Fails Because It Misstates the Judgment and California Law.

The state court judgment found Addington personally liable for both the Interference and contract claims. The state court first calculated that Addington caused Plaintiffs $2,850,000 in damages on the contract claim; broken down into categories such as lost profits, rent paid to Addington and rent paid to open a second distributorship. (Decision, 30-31). The state court then applied the same calculations to damages for the Interference claim.: "Section II.D (above) shows the harm Humboldt suffered, broken down by specific categories, resulting from Piner Partners' breach of contract. The same evidence shows the harm caused by the disrupted relationships." *Ibid*, at 35: 10-13. Notably, the damage categories in the Decision match those found in the Interference jury instruction. See, CACI verdict form VF 2202—Intentional Interference with Prospective Economic Advantage, question 7 (damages categories include past lost earnings, past lost profits, other past economic loss; future lost earnings, future lost profits).

The state court found Addington liable under both tort and contract theories, and found Addington caused the same amount of damages for both claims. Because California law does not allow double recovery damage awards, the state court's total damage award was limited to $2,580,000. The California Supreme Court explained the rule: "Regardless of the nature or number of legal theories advanced by the plaintiff, he is

not entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence. Double or duplicative recovery for the same items of damage amounts to overcompensation and is therefore prohibited." *Tavaglione v. Billings* (1993) 4 Cal. 4th 1150, 1158-1159; see also, *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638: "Recovery, however, may be limited by the rule against double recovery of tort and contract compensatory damages."

Indeed, a published California bankruptcy court decision rejected the identical argument raised here by Addington. *In re Howell* (Bank. CD-Cal. 2020) 623 B.R. 565*. In *Howell*, the court granted the creditor's summary judgment motion on a 523(a) complaint, finding issue preclusion from a state court judgment. The *Howell* debtor made the same argument Defendant makes here: "Defendant alleges that under applicable state law, a party may not separately recover under both contractual and tortious causes of action, because such a recovery would be duplicative. As such, Defendant asserts that because the state court awarded damages to Plaintiffs based on the breach of contract claim, it could not have simultaneously found Defendant liable for fraud." *Ibid*, at 18-19.

The *Howell* court rejected debtor's theory: "The Court disagrees. Under the double recovery theory, it is true that a plaintiff may not recover compensatory damages under both tort and contract causes of action arising out of a single 'item of damage.' It is important to note, however, that this theory addresses the computation of a money judgment after the plaintiff successfully establishes that defendant was liable under multiple theories of recovery. Accordingly, the double recovery theory does not prevent the determination of liability on several different causes of action." *Ibid*, at 19-20.

Defendant's "apportionment" claim fails as a matter of law and fact.[2]

### B. Issue Preclusion Prevents Addington from Relitigating Matters Already Decided in the State Court Litigation. Addington's Declaration Regarding His Intent Should Be Disregarded.

---

[2] Plaintiffs move to strike Defendant's attaching an entire set of discovery requests and responses as evidence submitted to support the apportionment claim. See Section II-E, Metzger Decl., Exhs. A-M.

Addington's declaration improperly tries to characterize what the state court decided (Addington Decl., ¶6-11); and presents his version of events (¶12-16) that the trial court disregarded as not credible. See Decision, 2:11-15. The Decision itself—not Addington's' characterization—controls the analysis; the portions of Addington's declaration that purport to recharacterize the state court record should be stricken. See Addington Decl., ¶6-11.

Moreover, Addington's statements as to his alleged subjective lack of intent to injure Plaintiffs cannot be squared with the preclusive findings of the state court judgment. See *In re Baldwin* (9th Cir. 2001) 249 F.3d 912, 920: "Where, as here, the state court was fully capable of adjudicating the issue subsequently presented to the bankruptcy court, we conclude that the public's confidence in the state judicial system would be undermined should the bankruptcy court relitigate the question of whether [defendant] had acted with the intent to injure [plaintiff]." See also, *In re Su*: "We are not suggesting that a court must simply take the debtor's word for his state of mind. In addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action. *In re Su*, 290 F.3d 1140 (9th Cir. 2002), fn. 6.

In *Baldwin*, the Ninth Circuit held that a final state court judgment for battery necessarily included a finding of intent to cause injury. *In re Baldwin*, supra, 249 F.3d at 918. Here, the state court concluded that Addington committed battery on Steve Dodge, citing the CACI jury instruction listing the essential elements of battery. Decision, 34:2-3. Because the state court found Addington committed battery, Addington cannot relitigate the preclusive effect of his intent to cause injury.

The same is true of the state court finding that Addington committed multiple acts of conversion. The Ninth Circuit in *In re Jercich* explained: "Under this definition, the actor's deliberate act with knowledge that the act is substantially certain to cause injury is sufficient to establish willful intent. This definition is consistent with the


Case: 25-04032 Doc# 35 Filed: 10/07/26 Entered: 10/07/26 15:50:21 Page 8 of 14

approach this court took in the post-*Geiger* case of *In re Bailey*, where we stated that the conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, constitutes a willful and malicious injury within the meaning of § 523(a)(6)." *In re Jercich*, 238 F.3d 1202, 1208 (9th Cir. 2001).

The state court judgment leaves no doubt that Addington committed conversion without Humboldt's knowledge or consent, intentionally and without justification and excuse, to Humboldt's injury. See Decision, at 17:9-11: "Addington, **without consent or authority**, sold product under Addington's 'CHAMP' distributorship, then denied doing so despite photograph proof." (bold added). See also, Decision, at 17:1-5: "Addington changed the key-pad locks on the interior doors so **Tobias and Humboldt could not access over $1 million of their product** in the refrigerated storage locker. **Addington locked access to the sally port**-the only place where cannabis could legally enter and exit the facility-**despite his own admission** that the State allowed the sally port to serve as shared space." (bold added).

Similarly, the state court found that Addington committed multiple acts of trespass, which are non-dischargeable under 523(a)(6) if the "trespass was intentional and in excess of the permission granted." *Simas v. Powell* 635 B.R. 366, * (Bankr. N.D. Cal.-2021), fn. 4: "[Defendant] understood that injury to [plaintiffs] was substantially certain to occur given that [plaintiffs] would have been prohibited from using the Property. These consequences include that the [plaintiffs] could not access their Property, including their personal belongings, without interference and the [plaintiffs'] loss of use and enjoyment of the Property." *Ibid*, at 16-17.

Here, the state court found that Addington's trespass was intentional and in excess of the permission granted. "Addington and Piner committed trespass—they **wrongfully excluded** Humboldt from use of the sally port, processing and packaging areas by **Addington making the unsupported claim** that they were part of CHAMP's leased space and **locking Humboldt out of the premises**. Addington committed


Case: 25-04032 Doc# 35 Filed: 10/07/26 Entered: 10/07/26 15:50:21 Page 9 of 14

trespass by locking Humboldt out of the entire building- by putting on a chain-lock on the front door, then **changing the front door locks after posting eviction notices**." *Ibid*, at 33:25-27 (bold added).

Most importantly, the Decision left no doubt that Addington knew his conduct was substantially certain to cause injury. The state court recounted Tobias' testimony: ""**We continually informed David that it wasn't working, we weren't making our deadlines, we were losing our accounts**, and we were just - weren't - the process wasn't working for us and we needed to have more space so that we could do our own packaging and make our own deadlines." Decision, 34:7-10 (bold added). And "**when Tobias told Addington that Piner's restrictions were forcing Humboldt to tum away business, Addington's response boiled down to, 'I don't care.'** We're not going to do anything to adjust your space. Just put your orders in, and we'll get to them when we can get to them. And I'm not going to adjust my SOPs regarding chain of custody at all.' So, it just got basically impossible to work." *Ibid*, at 18:2-6 (bold added).

Addington cannot ignore the extensive trial court findings. The above-cited authorities show that Addington committed torts that constitute willful and malicious acts as a matter of law (battery), and multiple torts that are deemed willful and malicious when additional facts are found as the state court judgment did here (conversion, trespass). Finally, the state court found that Addington knew his conduct was causing injury; he just didn't care. Issue preclusion prevents Addington from now claiming he did not intend to cause injury.

### C. California Law Does Not Require Independently Wrongful Acts to Be Pled as Separate Causes of Action to Prove Intentional Interference; or for Wrongful Acts to Be Directed Only at a Party.

Defendant argues that because conversion, trespass and battery were not pleaded as separate causes of action, they cannot serve as the basis for issue preclusion. Defendant again misstates California law. See, *Redfearn v. Trader Joe's Co*., 20 Cal.


Case: 25-04032 Doc# 35 Filed: 10/07/26 Entered: 10/07/26 15:50:21 Page 10 of 14

App. 5th 989, 1006: "The fact that the defendant's conduct was independently wrongful is an element of the interference cause of action itself. . .. Accordingly, contrary to Trader Joe's argument on appeal, to state a cause of action for intentional or negligent interference with prospective economic advantage, it is not necessary to also plead a separate, stand-alone tort cause of action." *Ibid*, at 1006 (cited with approval in CACI 2202—Sources and Authority, p. 1343). [3]

Here, Humboldt's Cross-complaint alleged that Addington "undertook a course of conduct to force Tobias and HGN from the Subleased Premises, including but not limited to: a. Repeatedly installing chain locks on the door to the subleased Premises that impede Tobias' and HGN's access to the Subleased Premises; b. Repeatedly installing interior walls and locked doors which impede Tobias' and HGN's access to the Subleased Premises; c. Repeatedly refusing Tobias and HGN access to the common areas and Sally Port and d. Defendants wrongfully taking Tobias Dodge's and Humboldt Growers Network's property and placing it under lock and key, depriving them the use of their property." (Amended Cross-Complaint, ¶ 16 [Exh. 1 to Jones Decl., Docket #32]). Those factual allegations were incorporated by reference into the Interference cause of action (*Ibid*, at ¶ 27). The state court judgment found that Addington committed all the acts alleged in para. 16 of the Humboldt's Cross-complaint. The state court judgment held that each of the acts constituted the tort of trespass or conversion, and that they were "independently wrongful acts" satisfying an essential element of the Intentional Interference cause of action. (Decision, 33:12-28; 34:1-3).

Relatedly, Defendant's argument he was unaware he was defending a battery claim is belied by the fact the Decision recounted three separate witnesses who testified to the assault on Steve Dodge at trial, including Addington himself. (Decision, 26:14-24). Moreover, as the California Supreme Court explained, it doesn't matter whether Steve Dodge was a party. *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1163: "If the defendant's improper conduct constitutes independently wrongful behavior, the

[3] *Redfearn* was disapproved of in part on other grounds in *Ixchel Pharma, LLC v. Biogen, Inc*. (2020) 9 Cal. 5th 1130, 1148.


Case: 25-04032 Doc# 35 Filed: 10/07/26 Entered: 10/07/26 15:50:21 Page 11 of 14

fact that the plaintiff is an indirect victim does not preclude recovery. Contrary to the arguments of Lockheed Martin and the concurring and dissenting opinion, we find no sound reason for requiring that a defendant's wrongful actions must be directed towards the plaintiff seeking to recover for this tort. The interfering party is liable to the interfered-with party when the independently tortious means the interfering party uses are independently tortious *only as to a third party*." *Ibid* (italics in original).

Besides, Steve Dodge is not a random person—Addington sued Steve as part of his Complaint; Steve and Tobias own Humboldt together, and Steve personally signed the second Phillipsville lease after Addington made it impossible for Humboldt to work at the leased premises. (Decision, 19:17-19; 29: 24-25).

### D. The State Court Judgment Found Addington Personally Liable for Intentional Inference Based on Multiple Findings of His Own Tortious Conduct. Addington's Personal Liability for Contract was Based Solely on His General Partner Status.

Defendant argues the Interference finding is based solely on Piner Partners' contract breaches. Addington's theory assumes he was an innocent bystander, caught by statutory derivative liability. That is not reality. Addington simply ignores the state court findings that he personally committed multiple intentional torts.

The Decision includes a section entitled "**Addington Engaged in Wrongful Conduct.**" cataloguing that he personally committed multiple acts of conversation, multiple acts of trespass, and battery. (Decision, 33-34). Plaintiffs' Motion catalogued the evidentiary findings of Addington's conduct for each tort and tied them to cases where conduct like Addington's was held non-dischargeable. (See Plaintiffs' MPA, Docket #30, pp. 14-21).

Addington's personal liability for contract was solely a result of his general partner status; Addington was not a party to the lease. At the risk of distracting from the material issues, here's the details: Addington filed 125 separate objections to the original Statement of Decision, including: "Page 36 line 9: What is the basis for determination of joint and several liability?" Humboldt's response to Addington's


Case: 25-04032 Doc# 35 Filed: 10/07/26 Entered: 10/07/26 15:50:21 Page 12 of 14

objection explained: "The Statement of Decision extensively catalogued Addington's own wrongful conduct, personally and on behalf of Piner Partners, that created joint and several liability for Addington and Piner Partners on the Interference cause of action." (Suppl. Jones Decl., Exh. 4). Humboldt's response continued: "As to Breach of Contract liability, Mr. Addington was not a party to the subleases; he signed the sub-leases on behalf of Piner Partners, GP. However, Addington testified that once he dissolved TBKCA, LLC, he became an individual general partner of Piner Partners; and as of trial Addington remained an individual general partner of Piner Partners. As a matter of law, a general partner is personally liable for all partnership liabilities. Corp. Code §16306: "Except as otherwise provided in subdivisions (b) and (c), all partners are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant or provided by law." *Id*." Humboldt suggested clarification to the original Statement of Decision, which the trial court adopted in its Amended Final Statement of Decision. *Ibid*.

**E. The Court Should Strike Defendant's Introduction of an Entire Set of Discovery Requests and Responses.**

Defendant filed an entire set of discovery requests and responses (Interrogatories, Requests for Admission, Requests for Production of Documents) with his opposition, solely to support his "damage apportionment" claim. (See Metzger Decl., Exhs. A-M). The wholesale filing of discovery materials is improper for several reasons.

First, as stated above in Section II-A, Defendant's "apportionment" argument is wrong as a matter of law and fact. Second, Plaintiffs objected to discovery asking how the state court awarded damages, because the state court's findings are contained within the Decision and Judgment themselves. Finally, even if the discovery requests directed to "apportionment" were proper, that does not justify attaching entire sets of discovery into the record. See, 11 Moore's Federal Practice - Civil § 56.92 (fn. 2— "routine filing of discovery responses prohibited); see, F.R.Civ.P. 5(d)(1).


Case: 25-04032 Doc# 35 Filed: 10/07/26 Entered: 10/07/26 15:50:21 Page 13 of 14

Plaintiffs request that the Court strike Exhibits A-M from the Metzger declaration.

## III. CONCLUSION

It is difficult for the Dodges and Humboldt to express, through counsel in the formality of a legal brief--that after a full trial, appeals and a vexatious litigant order--Addington still refuses to acknowledge his conduct and the damage he wrought on their business and lives. The record speaks for itself; the Court should grant summary judgment.

Dated: October 7, 2026

Respectfully submitted,

ROSS B. JONES, Attorney at Law

By:_______/s/____________________

Ross B. Jones
Attorneys for Plaintiffs Humboldt Growers Network, Inc. and Tobias Dodge